No. 20,363.

BANKING BOARD OF THE STATE OF COLORADO, ET AL., *v.*
HOLYOKE INDUSTRIAL BANK.
(383 P. [2d] 318)

Decided June 17, 1963.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK
E. HICKEY, Deputy, Mr. FLOYD B. ENGEMAN, Assistant,
for plaintiffs in error.

Messrs. HELLERSTEIN & HELLERSTEIN, Mr. WILLIAM F.
SCHENKEIN, Mr. SHERMAN E. WALROD, for defendant in
error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error as the Board and to
defendant in error as the applicant. The action is before

this court by writ of error to review a judgment of the district court by which the action of the Board in denying applicant a charter to operate a state bank was reversed. The district court ordered the Board to issue the charter as prayed by the applicant.

October 30, 1961, the applicant, who had theretofore been chartered as an industrial bank and conducting its business as such in Holyoke, county seat of Phillips county, Colorado, filed a Notice of Intention to convert from an industrial bank to a state bank. Pursuant to the statute (C.R.S. '53, 14-19-9) applicant filed with the State Bank Commissioner on November 25, 1961, its duly executed application to convert to a state bank, a copy of its proposed amended articles of incorporation, other pertinent instruments and information required of it, together with the application fee of $500.00. Pursuant to the statute the Board held a public hearing following publication of a notice of the application.

The statute (C.R.S. '53, 14-19-10 [3]) which gives rise to the controversy provides in pertinent part that:

"(a) The banking board within six months after the filing of an application for charter, and subject to section 14-19-10 (7), shall hold a public hearing to consider the application. At such hearing the applicant shall have the burden of proving:

"(b) That the proposed bank will serve a public need and advantage in the communities, community, or area of the community which the bank will serve, and

"(c) That the volume of business in the communities, community, or area of the community which the proposed bank will serve is such that profitable operation of the bank may be reasonably projected."

The Board ruled that the applicant had failed "to meet the burden of proof" required by the above quoted section and denied the application.

Upon review before the district court of Phillips county it was adjudged that:

"The order heretofore entered denying the applica-

tion of the Plaintiff be, and hereby is set aside and vacated, and the defendants are hereby ordered and directed to issue, or cause to be issued, the Charter prayed for in plaintiff's application subject to the limitations and conditions provided by Statute."

C.R.S. '53, 14-12-7 (2) provides that the district court may affirm the order of the Board, direct the taking of any action deemed proper, or may " * * * reverse or modify the order of the banking board if it * * * is not supported by substantial evidence in the record."

■ The applicant made a strong showing before the Board, salient portions of which clearly established that there is at present only one commercial bank in Holyoke; that fifty per cent of the people who live in the area have for one reason or another taken their banking business out of Holyoke; that the existing bank is operated as a family organization with eighty-five per cent of its stock held by its president; that prior to the application for a second bank a "float-charge" of 10 cents per $100.00 face value for every check deposited, which was drawn upon another bank, was imposed upon depositors in addition to a regular deposit charge; that it paid only one per cent on savings accounts up to $10,000.00 and no interest was paid on deposits in excess of that amount; that it discouraged savings accounts; that it did not handle consumer accounts such as automobile loans, furniture loans, appliance purchase contracts, etc.; that the policy of the existing bank has been extremely conservative; that by reason of low capital, surplus and undivided profits the existing bank was limited to loans of $6,000.00; that all loans for greater amounts were handled, if at all, by the president of the bank as a personal matter; that little or no use has ever been made of the loaning facilities of correspondent banks whereby such banks might participate in loans of over $6,000.00 to thus serve the community for those needs.

These facts were to a considerable extent established

by the testimony of officers of the existing First National Bank of Holyoke, the only objector to the granting of the requested charter. A number of businessmen and other persons of stature in the community affirmed the need for another bank in the area, and there was received in evidence the resolution of the Holyoke Chamber of Commerce recommending that the charter be granted for the reasons stated therein.

The evidence offered in opposition to the application stressed the recent decline in population of the area to be served as was shown by the 1960 census; described the volume of retail sales in Phillips county in 1958 and compared bank deposits in the existing bank with certain other banks in the general area; and dealt with statistics on employment and the number of farms in Phillips county. With reference thereto the trial court said in its findings, inter alia:

"This is evidence; it is admissible, and it may be relevant, but this evidence alone is not what is meant by 'substantial' evidence as that term is used in the Statutes and the cases.

"The materiality of such evidence and the determination of the ultimate fact toward which it may be relevant depends upon the introduction of other relevant and competent evidence."

The trial court carefully analyzed the testimony of all witnesses testifying to other facts and properly concluded that "None of this testimony lends support to the ultimate finding that the Board has made."

In the record before us there is no "substantial evidence" to support the action of the Board. From an article by Dean Harold Hurst appearing in 37 Dicta at page 87, we quote the following pertinent language:

"As a practical matter, there would be little point in holding hearings and taking evidence if decisions are not based upon evidence. As a matter of constitutional right, a person whose liberty or property is to be affected by

a hearing is entitled to a finding and decision in accordance with the evidence. * * * "

The judgment is affirmed.

MR. JUSTICE DAY not participating.